# Richmond

## PITTSBURGH PIPE CLEANER COMPANY OF MARYLAND, INCORPORATED v. GEORGE J. SLOAN.

December 1, 1952.

Record No. 3991.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*Jesse, Phillips, Klinge & Kendrick* and *Edward D. Gasson,* for the appellant.

*Howard W. Smith, Jr.,* for the appellee.

EGGLESTON, J., delivered the opinion of the court.

In December, 1949, George J. Sloan filed a bill in equity in the court below to require an accounting by the defendant, Pittsburgh Pipe Cleaner Company of Maryland, Incorporated, of commissions earned by the plaintiff while employed by the defendant. It was alleged that the defendant, a foreign corporation qualified to do business in Virginia, ''sells machinery, equipment and service in connection with the operation of a pipe cleaner business;'' that from January 1, 1944 to July 1, 1948 the plaintiff had been employed to solicit contracts for the defendant; that it was agreed between the parties that for the period from January 1, 1944 to September 15, 1945, the plaintiff was to be paid as compensation for his services 15% of the ''actual cost to the customer of all sales and service work procured by him'' for the defendant; that on September 15, 1945 the terms of the contract were changed and it was agreed that from that date until the termination of his employment he was to be paid a stipulated salary plus ''a commission amounting to 2% on all sales made by him in excess of $2,500 gross per month;'' that it was further agreed that the amounts of the contracts procured by the plaintiff for the defendant were to be ''subject to final audit and billing by the defendant corporation to the customer;'' that the defendant had terminated the contract on July 1, 1948, and since that date had refused to disclose to the plaintiff ''the final amounts'' of certain sales contracts procured by him subsequent to May 31, 1946, and that hence the plaintiff was ''unable to ascertain the exact amount'' of the commissions earned by and due to him.

The prayer of the bill was that the defendant be required to account to the plaintiff for the amount of the commissions earned by him ''from May 31, 1946 to the present,'' and to produce its books, papers and records in order that the correct amount due the plaintiff might be ascertained, and that the

defendant be required to pay the plaintiff the amount found to be due to him.

The defendant filed a motion for a bill of particulars, asking among other things that the plaintiff be required to show "what period the account requested is to cover." In a bill of particulars the plaintiff alleged that the commissions due him covered the period "from September, 1945, to the time of the termination of his contract by defendant."

In its answer the defendant admitted the employment of the plaintiff during the period and for the purposes alleged in the bill. While it admitted that the parties had entered into a new contract beginning September 15, 1945, under which the plaintiff was to be paid, in addition to a stipulated salary, a commission on sales negotiated by him, it denied that the agreed commission was to be computed on a monthly basis. It averred that the agreement was that the commission was to be computed on all "net sales" in excess of $30,000 a year, or an average of $2,500 per month; and that in no year, between September 15, 1945 and the date of the termination of the contract, did the plaintiff's yearly net sales exceed the stipulated amount. Hence, it alleged, no commissions were earned by and due to the plaintiff for this period.

The answer further averred that during the period from January 1, 1944 to September 15, 1945, when the plaintiff was employed on a straight commission basis, the defendant had made to him advance payments of $250 per month, which exceeded by $2,878.93 the amount of the commissions earned in that period. Therefore, it averred, for the total period of the employment the defendant owed the plaintiff nothing, and the plaintiff instead was indebted to it in the sum of $2,878.93.

With its answer the defendant filed a schedule of invoices showing the amounts of the various contracts procured by the plaintiff from September 15, 1945 to the date of the termination of the employment, the period for which the accounting had been sought, and a statement of the commissions earned by and advances to the plaintiff during the period from January 1, 1944 to September 15, 1945.

The evidence on behalf of the plaintiff was heard in open court and supported the allegations of the bill. The plaintiff filed and verified the accuracy of an itemized account, based on the invoices disclosed in the schedule attached to the defendant's

answer, which showed that the defendant was indebted to him for commissions on sales made between September 15, 1945 and the date of the termination of his employment in the sum of $1,350.28. As to the agreement between the parties, the testimony of the plaintiff was corroborated by that of Lawrence R. Robinson, who had been president of the defendant corporation from 1938 to 1947.

The defendant offered the deposition of Kyle I. Robinson, its then vice-president, taken shortly before the trial, which supported the allegations of the answer and confirmed the accuracy of the attached schedule and statement.

Upon this evidence the trial court held and decreed that the plaintiff was entitled to recover of the defendant the sum of $1,290.12 with interest, and from that decree the present appeal has been taken.

The first assignment of error is that the lower court "erred in ruling that the account between the parties should cover only the period from September 15, 1945 to July 30, 1948, and should not include the period from January 1, 1944 to September 15, 1945."

We find nothing in the record to support the assertion in this assignment that the court held or ruled that the accounting should be limited to the period first mentioned. At the taking of the deposition of Kyle I. Robinson the defendant introduced evidence which supported the averment in the answer that during the period from January 1, 1944 to September 15, 1945, when the plaintiff was employed on a straight commission basis, the amount of advances to him exceeded by $2,878.93 the total sum of the commissions earned. The plaintiff objected to this evidence on the ground that it did not relate to the period for which the accounting had been asked. At the trial the objection was again pressed as to this and other evidence of a similar purport, and the matter was fully argued. The final ruling of the lower court is shown by this colloquy:

"Mr. Gasson (counsel for defendant): Your Honor, I would simply like to make this statement for the record at this time. I haven't gone into anything prior to September 15, 1945, and I wish to have the record show that I reserve my right to contend and to submit authorities that we are entitled to have the account between the parties here extend from January 1, 1944 to the termination of Mr. Sloan's employment.

"The court: Let me see, Mr. Gasson, if that is exactly what our understanding was. You now want the right to introduce these items back to 1944. That is not exactly what I held. I held if you will submit authorities that will sustain your point, then you may go into matters prior to September 15, 1945. If you don't maintain that position you cannot go any further back than that.

"Mr. Gasson: That is what I understand. I thought that is what I said.

"The court: In the event that you maintain that position, then you will ask permission.

"Mr. Gasson: Yes, sir.

"The court: That is all right."

Although nearly five months elapsed between the date of the hearing and the entry of the final decree, there is no showing in the record that counsel for the defendant at any time sought permission to reopen the matter, or asked and was denied permission to offer evidence as to the status of the account prior to September 15, 1945, or the understanding of the parties with respect to it. Clearly, we think, this was an indication to the trial court that the defendant had abandoned the matter and was content to submit the cause on the evidence theretofore taken. And the court so treated it.

But aside from this, when we pursue the course urged in defendant's brief and inquire into the merits of its claim, based on the record before us, we readily reach the conclusion that it is not sustained by the preponderance of the evidence.

The sole basis for the defendant's claim is found in the deposition of Kyle I. Robinson, who, as has been said, testified that during the period from January 1, 1944 to September 15, 1945, when the plaintiff was employed on a straight commission, the defendant had made monthly advances to him of $250, the total of which exceeded by $2,878.93 the amount of commissions earned by him during that period.

It is significant, however, that this witness failed to testify that it had been agreed between the parties that the plaintiff was to refund this excess to the defendant, or that it ever made any demand on him therefor. Nor is this shown by any other evidence.

On the other hand, Lawrence R. Robinson, who was president of the defendant corporation at the time the alleged indebtedness

of the plaintiff was incurred, and called as a witness for the plaintiff, testified on cross-examination that the plaintiff was not indebted to the defendant for these advances, because, he said, "it was agreed that whatever advancements that had been made to Mr. Sloan were made on a basis of doing that much missionary work. That was discussed in our executive committee meeting."

Moreover, on August 29, 1945, the defendant's vice-president wrote the plaintiff notifying him that his "present contract" would be canceled, and that thereafter he would be employed on the basis of a weekly salary plus a 2% commission "on all business in excess of $2,500 monthly." Nothing was said in this letter to indicate that the defendant corporation had a claim of any amount against him for these advances. Again, when the defendant terminated its relations with the plaintiff in June, 1948, it paid him his earned salary and "a month's separation pay" without any deduction or reservation of a claim for such advances.

Finally, although the defendant in its answer claimed that it owed the plaintiff nothing for earned commissions and that he, on the other hand, owed it the amount of this overpayment, it did not ask judgment against the plaintiff for this amount. Both at the trial and in its brief before us the defendant took the position that it desired no judgment against the plaintiff, but would be satisfied merely with a disallowance of his claim against it. This is hardly the action of a creditor seeking the collection of a just debt.

The other assignments of error involve purely factual matters. The defendant insists, as asserted in its answer, that the agreement was that the plaintiff's commissions for the period from September 15, 1945 to the termination of his employment were to be computed on a yearly basis—that is, he was to be paid a commission on his sales over $30,000 per year, or an average of $2,500 per month. Since, it says, his yearly sales never amounted to that much he was entitled to no commission.

The plaintiff testified that according to the agreement he was to be paid a commission for each month during which his sales amounted to more than $2,500. His testimony is fully corroborated by that of Lawrence R. Robinson, who was president of the defendant corporation at the time the agreement was made.

Moreover, the verbal testimony in support of the plaintiff's contention is buttressed by documentary evidence. On September 11, 1945, Kyle I. Robinson, the vice-president of the corporation, wrote the plaintiff that effective on the fifteenth day of that month he would be paid "2% commission on business beyond $2,500 per month." There is further documentary evidence that the defendant actually made him two payments of commissions calculated on this basis.

The verbal testimony of Kyle I. Robinson supports the defendant's view. It also appears that on April 24, 1946, this witness wrote the plaintiff that his commissions would be "cumulative with adjustments being made quarterly." But the parties disagree as to the interpretation of this language. The plaintiff testified that it meant that the earned commissions were to be paid quarterly. At any rate, as late as January 19, 1948, Kyle I. Robinson sent the plaintiff a letter remitting a payment for commissions based on sales in excess of $2,500 for a single month.

It thus appears that there is ample evidence to support the trial court's finding.

The final item in controversy involves the lower court's allowance to the plaintiff for full commissions on contracts which he had procured with the city of Charlotte, North Carolina, in January and February, 1948. The defendant contends that the plaintiff should have been allowed only a part of this commission because commissions had to be paid to another agency for its assistance in obtaining the contracts.

This is but another instance in which the trial court has resolved conflicting evidence in favor of the plaintiff. Since there is ample evidence to support the finding it is binding on us.

On the whole we find no error in the record and the decree appealed from is

*Affirmed.*